UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Trina Britain et al.,

    Plaintiffs

v.

Clark County,

    Defendant

Case No.: 2:12-cv-1240-JAD-NJK

**Order Denying Summary Judgment and Conditional Approval of FLSA Collective Action**
**[##71, 75]**

    Bailiffs and deputy marshals in Clark County's Eighth Judicial District Court and Las Vegas Justice Court sue the County under the Fair Labor Standards Act (FLSA) for unpaid lunch periods during which they were required to work off the clock, and they move for conditional certification of their collective action.[1]  Clark County opposes the certification request and moves for summary judgment, arguing that the plaintiffs have the wrong defendant: the court, not the County is their employer and, regardless, they cannot prove their FLSA claim.  I find that the unsettled state of the record as to (1) who the plaintiffs' employer is for FLSA purposes and (2) whether these employees were compelled to work their lunch breaks without compensation and with their employer's knowledge requires the denial of the County's motion for summary judgment.  And I deny the motion for conditional certification because plaintiffs have left too many unresolved issues.

**Discussion**

    Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[2]  When considering summary judgment, I view all facts and draw all inferences in the light most favorable to the nonmoving party.[3]  If reasonable minds could differ on material facts, summary

---

[1] *See* Doc. 11 at 2–3 (second amended complaint).  The lunch-break claim is the only remaining claim after the parties' settlement.  *See* Doc. 75 at 2.

[2] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[3] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1

judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[4]

If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[5] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"; it "must produce specific evidence, through affidavits or admissible discovery material, to show that" there is a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[6]

### A.  Genuine issues of fact preclude summary adjudication of the question of whether Clark County is the plaintiffs' employer under the FLSA.

For purposes of asserting a claim under the FLSA, "'[e]mployer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee."[7] "[T]he 'economic reality' rather than 'technical concepts' is to be the test of employment."[8] When evaluating the "economic reality" of an employment relationship, courts must consider the totality of the circumstances. In the Ninth Circuit, courts are guided by—but do not blindly apply[9]—four factors:

> The four major factors I must consider are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."[10] These are the same factors used for determining who is the primary employer, if any, in joint-

---

[4] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[6] *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted); *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[7] *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1469 (9th Cir. 1983) (quoting 29 U.S.C. § 203(d)) (internal quotation marks omitted).

[8] *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961).

[9] *Bonnette*, 704 F.2d at 1469–70 (quoting *Rutherford Food Corp. v. McComb,* 331 U.S. 722, 730 (1947) (internal quotation marks omitted)).

[10] *See id.*

2

employment relationships.[11]

Whether Clark County is plaintiffs' employer as broadly and untechnically defined by the FLSA cannot presently be determined as a matter of law because ample evidence[12] for and against this proposition exists. Although the County points to statutory provisions that give the judicial officers the power to appoint bailiffs and deputy marshals, the same provisions require the County's board of commissioners to determine bailiff and marshal salaries and direct the County to pay those salaries.[13] A letter of understanding between the County and the courts, relied upon by both parties in their briefs, gives the Clark County Human Resources Department the authority to provide "comprehensive personnel services to the courts including classification and compensation, recruitment, employee relations, personnel systems and records, employee assistance and wellness, and other services including support from the Office of Diversity" to bailiffs and marshals.[14] And in 2008, it was the Clark County Human Resources department that was "tasked with conducting a comparative study of Clark County Bailiff salaries and classifications from Clark County and other public entities/jurisdictions within our market area."[15]

The County offers various documents that suggest that the bailiffs and marshals consider

---

[11] *Moreau v. Air France*, 356 F.3d 942, 946 (9th Cir. 2004) (quoting 29 C.F.R. § 825.106).

[12] Although I consider most of the evidence submitted by the parties because it is properly authenticated or sufficiently trustworthy, *see Orr*, 285 F.3d at 733, there are several items I do not consider.

Plaintiff's exhibit 21 is an order from a litigation matter in state court, and defendants' exhibits M and N are a motion filed in state court and an order from a Nevada Local Government Employee-Management Relations Board. Although I may take judicial notice of these documents under Federal Rule of Evidence 201, I give their contents no legal significance.

Plaintiffs' exhibit 25 is counsel Adam Levine's affidavit. To the extent that it makes representations about the legal status of employees or the interpretation of statutory or code provisions, I find it lacks proper foundation, and I do not consider it. The affidavit of Anthony Vogel suffers from similar defects. I consider only its true factual content and disregard the legal conclusions it offers.

[13] Doc. 71 at 14 (citing Nev. Rev. Stat. § 3.310), 15 (citing Nev. Rev. Stat. § 4.353).

[14] Doc. 72-11 (letter of understanding).

[15] Doc. 90-23.

3

themselves employees of the court.[16]  But the plaintiffs offer their own documents, including Deputy Marshal Eric Prunty's affidavit in which he attests that he was "first hired by Clark County as a Park Maintenance Worker with the Clark County department of Parks and Recreation" and permitted to "transfer[]" to his deputy marshal position.  The letter memorializing his interview for his position thanks him for his interest "in employment opportunities with Clark County."[17] And upon his transfer to his new position, all of his accrued sick, vacation, and comp time transferred with him.[18]  Thus, there is certainly evidence in the record from which a reasonable factfinder could conclude that the County determined the rate and method of payment for the bailiffs and deputy marshals and maintained their employment records.

Plaintiffs also provide an affidavit from James Miranda, the president of Excel Training Solutions, which trains deputy marshals for certification as Category I peace officers.[19]  He attests that his company's consulting agreement is with the "Clark County Courts," which he understands to be an administrative unit of Clark County, and that Clark County paid him for his work.[20]  In addition, he states that he had to become an approved vendor for Clark County in order to obtain his consulting agreement to train the deputy marshals, suggesting that the County itself controlled some conditions of their employment.[21]  Deputy Marshal Prunty's affidavit corroborates that he considers the judge in whose courtroom he works to be his "supervisor," not his employer.[22]

In sum, the plaintiffs have demonstrated that the question of which entity qualifies as the plaintiffs' employer under the FLSA is not answered by this factual record.  A reasonable jury could find, based on the totality of the circumstances, that Clark County is plaintiffs' employer as broadly

---

[16] Doc. 71 at 18; Doc. 72-14.

[17] Doc. 90-22.

[18] *Id*.

[19] Doc. 90-24.

[20] *Id.*

[21] *Id.*

[22] *Id.*

defined by the FLSA. These genuine issues of material fact prevent me from granting summary judgment in favor of Clark County on this issue.[23]

**B. Conflicting evidence precludes a finding that plaintiffs cannot prevail on the merits of their FLSA claim.**

Defendants next argue that they are entitled to summary judgment for the additional reasons that there is no evidence to support the plaintiffs' claim that they worked off the clock or that their employer (whoever it is) knew they were working off the clock.[24] The record does not support this characterization.

*1. There is evidence that the plaintiffs were required to work through their lunch breaks.*

"An employee cannot be docked for lunch breaks during which he is required to continue with any duties related to his work."[25] This is made clear in 29 C.F.R. § 785.19, which states that "[b]ona fide meal periods are not worktime." Instead:

> These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or

---

[23] I am not persuaded that the Nevada Supreme Court's decision in *City of Sparks v. Sparks Municipal Court*, 302 P.3d 1118 (Nev. 2013), finding that the City of Sparks was constitutionally prohibited from requiring the municipal court to reduce salaries, has any place in this discussion or bearing on my decision here. Unlike the situation in *City of Sparks*, the County is not attempting to assert influence or power over the court without the court's consent. I also do not conclude by this order that Clark County is the plaintiffs' employer, just that genuine issues of fact preclude me from determining that it is not. Regardless, even if I were to conclude *arguendo* that the County were constitutionally prohibited from being plaintiffs' employer, that would only be one of the many factors I would consider under the economic-realities test to determine if the County can be subject to employer liability under the FLSA. "The definition of 'employer' under the FLSA is not limited by the common law concept of 'employer,' but 'is to be given an expansive interpretation in order to effectuate the FLSA's broad remedial purposes.'" Boucher v. Shaw, 572 F.3d 1087, 1090 (9th Cir. 2009) (quoting *Lambert v. Ackerley*, 180 F.3d 997, 1011–12 (9th Cir. 1999)). "The Supreme Court has even gone so far as to acknowledge that the FLSA's definition of an employer is 'the broadest definition that has ever been included in any one act.'" *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 683 F.3d 462, 467–68 (3d Cir. 2012) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)).

[24] Doc. 71 at 23.

[25] *Brennan v. Elmer's Disposal Serv., Inc.*, 510 F.2d 84, 88 (9th Cir. 1975) (citing 29 C.F.R. § 785.19) (citations omitted); *cf. Alvarez v. IBP, Inc.*, 339 F.3d 894, 913 (9th Cir. 2003) (quoting *Brennan*).

5

> inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.[26]

In its summary-judgment motion and reply, the County argues that each plaintiff testified to understanding the overtime policy and procedure, applying for it when their meal breaks were interrupted by court business, and receiving overtime whenever they applied for it.[27]

But plaintiffs cite to portions of deposition transcripts where plaintiffs testify that—the majority of the time—they were required to work during their designated lunch periods, they were on call during lunch, they were discouraged from taking lunch, they had trouble obtaining approval of their overtime, and they were unable to do personal things during lunch.[28] These transcripts are specific in describing the lunch-time work that the plaintiffs were required to do; they are also specific about what difficulties the plaintiffs faced in obtaining overtime pay for that work. This conflicting testimony raises material issues of fact that can only be resolved by the trier of fact.

### 2. *Plaintiffs have demonstrated issues of fact regarding whether their employer had notice of their overtime work.*

Finally, the defendant argues that it lacked actual or constructive knowledge of employees working overtime.[29] It contends that the plaintiffs failed to provide adequate notice.[30] Plaintiffs, however, point to the deposition testimony of various bailiffs and deputy marshals who testify that they were discouraged from putting in for overtime for missed and interrupted lunches[31] or had their overtime requests denied.[32] The testimony from several bailiffs and deputy marshals that they were

---

[26] 29 C.F.R. § 785.19.

[27] *See* Doc. 71 at 2–10; *see also* Doc. 95 at 9.

[28] *See* Doc. 90 at 4–5 (discussing deposition transcripts).

[29] Doc. 71 at 24.

[30] *See id.*

[31] Docs. 90-7 at 3; 90-11; 90-14; 90-19.

[32] Doc. 90-9 at 3.

6

1  routinely and publicly called to perform their job duties during their lunch breaks[33] suggests that this
2  practice could not have gone unnoticed by their supervisors.  Drawing all reasonable inferences from
3  this evidence, as I must, I conclude that this evidence is enough to create a jury issue on the question
4  of whether the plaintiffs' employer had notice that these employees were engaging in overtime work.
5  Accordingly, summary judgment is denied.

6  **C.    Plaintiff's motion for conditional certification of a collective action**

7  Employees may bring suit under the FLSA individually or as part of a collective action on
8  behalf of themselves and other similarly situated employees.[34]  The majority of courts consider
9  certification[35] in two stages.[36]  In the first stage, courts determine whether the potential class should
10 receive notice of the suit.[37]  Plaintiffs need only "make substantial allegations that the putative class
11 members were subject to a single illegal policy, plan or decision."[38]  After the record has been
12 developed through discovery and the opt-in-notice process is complete, the court employs a "more

---

[33] *See*, *e.g.*, Docs. 90-10 at 3; 90-12 at 4; 90-16 at 3–4.

[34] 29 U.S.C. § 216(b); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004) (citing 29 U.S.C. § 216(b)); *Does v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000)) (citation omitted).

[35] For purposes of this order, I use the terms "class" and "certification" in a colloquial sense, as the point at this stage is to approve the sending of a notice of a collective action to similarly situated employees, and no "class" is being certified under Rule 23. *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1259 (11th Cir. 2008) (noting that "certification" of a collective action is a device to facilitate notice to potential class members and does not actually "create a class of plaintiffs" for a FLSA collective action). "'Certification' is neither necessary nor sufficient for the existence of a representative action under FLSA, but may be a useful 'case management' tool for district courts to employ in 'appropriate cases.'" *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (quoting *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 169 (1989)).

[36] *Leuthold*, 224 F.R.D. at 467; *see also Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 470 (E.D. Cal. 2010) (collecting cases).

[37] *Leuthold*, 224 F.R.D. at 467 (writing that conditional certification is "based primarily on the pleadings and any affidavits submitted by the parties.").

[38] *Murillo*, 266 F.R.D. at 471 (quoting Adams v. Inter-Con Sec. Sys., Inc., 242 F.R.D. 530, 536 (N.D. Cal. 2007) (citing *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)) (internal quotation marks omitted); *see also Benedict v. Hewlett-Packard Co.*, 2014 WL 587135, at *5 (N.D. Cal. Feb. 13, 2014) (quoting *Villa v. United Site Servs. of Cal.*, 2012 WL 5503550, at *13 (N.D. Cal. Nov. 13, 2012) (citation omitted); *see also Morton v. Valley Farm Transp., Inc.*,  2007 WL 1113999, at *2 (N.D. Cal. Apr. 13, 2007)) (internal quotation marks omitted); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001).

7

stringent factual analysis," typically triggered by the defendant's motion to decertify.[39] If, during this second stage, the court determines based on this more rigorous inquiry that the plaintiffs are not similarly situated, "the court may decertify the class and dismiss the opt-in plaintiffs without prejudice."[40]

### 1. *A first-stage analysis remains appropriate.*

Defendant offers the undeveloped argument that I "should look more closely at whether the [p]laintiffs are 'similarly situated" because discovery has closed.[41] I decline this invitation.

In *Leuthold v. Destination America*, ths circuit's oft-cited decision on the two-step FLSA certification analysis, the district court was faced with "a close question" of which stage of the analysis to apply.[42] Discovery was still in "a state of flux,"[43] and the court concluded it would be anomalous "to reach the questions governing the standard for decertification without ever reaching the threshold question whether conditional certification and notice are appropriate."[44]

Other courts considering the question of whether to skip the low, first-phase analysis and proceed directly to the more rigorous one have done so based on an undeveloped state of the discovery record and the desire to permit the opt-in process to be completed.[45] As one court observed:

> Skipping to the second stage not only requires the court to evaluate an incomplete (although potentially substantial) factual record—it interferes with the future completion of that record. Separate from the risk of an incomplete factual record, "[b]ypassing the notice stage altogether . . . might deprive some plaintiffs of a meaningful opportunity to participate." Measured against these dangers, delaying the second stage analysis risks little harm to defendant, who will be

---

[39] *Id.* at 467–68.

[40] *Id.*

[41] Doc. 86 at 12.

[42] *Leuthold*, 224 F.R.D. at 467.

[43] *Id.*

[44] *See id.* at 468.

[45] *See, e.g.*, *Kress v. PricewaterhouseCoopers, LLP*, 263 F.R.D. 623, 629 (E.D. Cal. 2009).

> free to move for decertification "once the factual record has been finalized and the time period for opting in has expired."[46]

I am persuaded of the continued utility of the first-stage analysis in this case despite the fact that discovery has closed and the record is developed. The opt-in plaintiffs are still unidentified, and courts have also recognized that "[t]he heightened scrutiny standard is only appropriate after the opt-in period has ended and the court is able to examine whether the *actual* plaintiffs brought into the case are similarly situated."[47] Waiting until after the opt-in period has expired will permit a more robust analysis at the second stage. Accordingly, I find that only a first-stage analysis is now required.

### 2. *Plaintiffs have demonstrated that the bailiffs and deputy marshals may be similarly situated.*

"At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."[48] It is inappropriate to weigh the merits of underlying claims here; instead, the issue is "whether potential opt-in plaintiffs may be similarly situated."[49] Plaintiffs have demonstrated, sufficiently for this stage of the certification process, that the potential opt-in plaintiffs were subject to the same lunch-break policies as they claim. They offer the testimony of several bailiffs and marshals who testified about their similar lunch-break and overtime-request experiences.[50] In opposing conditional certification, defendants primarily raise the very same arguments they make on summary judgment: that the

---

[46] *Id*. (quoting *Leuthold*, 224 F.R.D. at 464–68, and collecting cases).

[47] *Gortat v. Capala Bros.*, 2010 WL 1423018, at *10 (E.D.N.Y. Apr. 9, 2010), *aff'd sub nom. Gortat v. Capala Bros., Inc.*, 568 F. App'x 78 (2d Cir. 2014).

[48] *Id.*; *see also Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted).

[49] *Id.* at 368–69 (citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) ("The focus . . . is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated . . . with respect to their allegations that the law has been violated.")); *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 262 (S.D.N.Y. 1997) ("[T]he Court need not evaluate the merits of plaintiffs' claims in order to determine that a definable group of similarly situated plaintiffs can exist here.").

[50] Doc. 75 at 3-5 (citing deposition testimony).

9

County is not the plaintiffs' employer and the evidence is insufficient to sustain this FLSA claim.[51] I find that the evidence that precludes summary judgment also supports the conclusion that potential opt-in plaintiffs may be similarly situated to the plaintiffs.

### 3. There remain too many unresolved issues to grant conditional certification based on plaintiffs' motion.

But there are too many questions left unanswered to permit me to grant the request for conditional certification of an FLSA action based on the instant motion. Plaintiffs offer just one sentence on the scope of the class, stating, "Plaintiffs propose that the collective be defined as all bailiffs/marshals employed by Defendant from 2009 to the present."[52] Plaintiffs offer no connection between the 2009 date and their claim or any applicable statute of limitations, and I cannot find any basis for this date range in the operative complaint.[53] Thus, I am left unable to determine the scope of the putative class or craft a putative class definition.

Also unresolved are the questions of the form of the notice and the method for its distribution to the putative class members. Although plaintiffs attach a proposed opt-in form to their motion as Exhibit 19,[54] they offer no draft notice. Plaintiffs also ask me to order defendant "to turn over to Plaintiffs all contact information it has for those persons employed as bailiffs/marshals from 2009 through the present,"[55] but plaintiffs do not explain to the court the method by which they intend to serve the notice on the potential opt-in plaintiffs. These inadequacies leave me presently unable to determine (1) the sufficiency of the form of the notice; (2) the sufficiency of the method of its service; and (3) the scope of, or need for, any order directing the County to provide contact information.

---

[51] *See* Doc. 86 (consisting primarily of a near-verbatim reproduction of the summary-judgment arguments).

[52] Doc. 75 at 8–9.

[53] Doc. 11.

[54] Doc. 75-19.

[55] Doc. 75 at 8.

Finally, plaintiffs assume without asking that they will perform the role of interim class counsel: their proposed opt-in authorization form states, "I hereby designate the LAW OFFICE OF DANIEL MARKS[] to represent me in this action."[56] Federal Rule of Civil Procedure 23(g)(3) authorizes district courts to designate interim counsel to act on behalf of a putative class before the final certification decision is made.[57] But it would be imprudent for me to simply permit plaintiffs' counsel to become counsel for all opt-in plaintiffs without some analysis of counsel's fitness for that role.[58] Counsel does not even mention their desire to perform the role of interim counsel for these putative plaintiffs who return their opt-in forms, but the form automatically appoints them for this job. If plaintiffs' counsel desire to be designated as interim counsel for the opt-in plaintiffs, they should make that request of the court.

These unresolved issues counsel against granting conditional certification of an FLSA action whose scope I cannot currently determine. Accordingly, the motion for conditional certification is denied. Plaintiffs are encouraged to address these loose ends thoroughly in any renewed motion.

**D.    The April 7, 2015, motion hearing is vacated.**

I previously set a hearing on the County's motion for summary judgment and the plaintiffs' motion for conditional certification.[59] The resolution of these motions by this order eliminates my need for a hearing on these matters. Accordingly, I hereby vacate the April 7, 2015, hearing.

. . .

. . .

. . .

---

[56] Doc. 75-19.

[57] Fed. R. Civ. P. 23(g)(3).

[58] *See, e.g.*, *Flores v. Velocity Exp., Inc.*, 2013 WL 2468362, at *10 (N.D. Cal. June 7, 2013) (discussing appointment of interim counsel in conditionally certified FLSA collective action).

[59] Doc. 108.

11

**Conclusion**

Accordingly, it is hereby ORDERED that the defendant's motion for summary judgement **[Doc. 71] is DENIED**;

IT IS FURTHER ORDERED that the plaintiffs' motion for conditional approval of an FLSA opt-in class **[Doc. 75] is DENIED** without prejudice; and

IT IS FURTHER ORDERED that **the April 7, 2015, motion hearing is VACATED**.

DATED March 31, 2015.

_____
Jennifer A. Dorsey
United States District Judge